AO 241   (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District  MASSACHUSETTS | |
|---|---|---|
| Name   TIAGO LEITE | Prisoner No.  W-64298 | Case No. |

| Place of Confinement     BAY STATE CORRECTIONAL CENTER<br>P.O. BOX 73<br>NORFOLK MA 02056 |
|---|

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| TIAGO LEITE                          v. | MICHAEL CORSINI, SUPERINTENDENT<br>BAY STATE CORRECTIONAL CENTER |

| The Attorney General of the State of:     MASSACHUSETTS |
|---|

## PETITION

1. Name and location of court which entered the judgment of conviction under attack

   BRISTOL SUPERIOR COURT/ 441 COUNTY STREET/ NEW BEDFORD MA 02740

2. Date of judgment of conviction   MARCH 12, 1998

3. Length of sentence   TEN YEARS to TEN YEARS AND A DAY

4. Nature of offense involved (all counts)   TRAFFICKING IN DRUGS

5. What was your plea? (Check one)
   (a) Not guilty                ☒
   (b) Guilty                    ☐
   (c) Nolo contendere           ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury                      ☒
   (b) Judge only                ☐

7. Did you testify at the trial?
   Yes  ☒    No  ☐

8. Did you appeal from the judgment of conviction?
   Yes  ☒    No  ☐

AO 241    (Rev. 5/85)

9.    If you did appeal, answer the following:

(a) Name of court        MA Appeals Court

(b) Result        Conviction Affirmed

(c) Date of result and citation, if known        09.28.00/ A.C. No. 99-P-1163

(d) Grounds raised    1.    Trial judge admitted improper evidence.
2. Prosecutor improperly focused arguments to the jury on its
main witness's duty to testify truthfully, and vouched for him.
3. Prosecutor accused defense of improper strategy.

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

10.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes  ☒    No  ☐

11.    If your answer to 10 was "yes," give the following information:

(a) (1) Name of court        Bristol Superior Court

(2) Nature of proceeding        New trial motion pursuant to <u>M.R.Crim.pP. 30(b)</u>

(3) Grounds raised        Denial of effective assistance of counsel.
Denial of due process.

AO 241    (Rev. 5/85)

      (4)  Did you receive an evidentiary hearing on your petition, application or motion?

          Yes  ☐   No  ☒

      (5)  Result  New trial motion denied by Bristol Superior Court

      (6)  Date of result  May 21, 2002

  (b)  As to any second petition, application or motion give the same information:

      (1)  Name of court

      (2)  Name of proceeding

      (3)  Grounds raised

      (4)  Did you receive an evidentiary hearing on your petition, application or motion?

          Yes  ☐   No  ☐

      (5)  Result

      (6)  Date of result

  (c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

      (1)  First petition, etc.    Yes  ☒   No  ☐

      (2)  Second petition, etc.   Yes  ☐   No  ☐

  (d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12.   State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize *briefly* the *facts* supporting each ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.

       CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241    (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A.  Ground one:



Supporting FACTS (state *briefly* without citing cases or law):


DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

(see attached pp 7-10)




B.  Ground two:



Supporting FACTS (state *briefly* without citing cases or law):


DENIAL OF DUE PROCESS

(see attached pp 10-14)

AO 241    (Rev. 5/85)

C.  Ground three:

Supporting FACTS (state *briefly* without citing cases or law):

D.  Ground four:

Supporting FACTS (state *briefly* without citing cases or law):

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
     Yes  ☐    No  ☒

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

     (a)  At preliminary hearing        Anthony Savastano
                                        92 William Street
                                        New Bedford MA 02740

     (b)  At arraignment and plea       Same as "a".

AO 241    (Rev. 5/85)

(c) At trial      Same as "a"

(d) At sentencing      Same as "a"

(e) On appeal      Dana curhan
                  3o Rowes Wharf
                  Boston MA 02210-3328

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16.    Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
      Yes ☐    No ☒

17.    Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
      Yes ☐    No ☒
      (a)  If so, give name and location of court which imposed sentence to be served in the future:

      (b)  Give date and length of the above sentence:

      (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
      Yes ☐    No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_Jiago Leite_
_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

    08.03.04
_____
Date

_____
Signature of Petitioner

(7)

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

TIAGO LEITE,                    )
        Petitioner,            )
                               )
                               )
v.                             )    CIVIL ACTION No. _____
                               )
                               )
MICHAEL CORSINI,               )
Superintendent of the          )
Bay State Corr. Center,        )
        Respondent.            )

PETITIONER'S MEMORANDUM IN SUPPORT OF
"PETITION FOR A WRIT OF HABEAS CORPUS"

I)  INTRODUCTION:

Petitioner Tiago Leite (hereinafter "Leite") seeks a writ of
habeas corpus ordering respondent Michael Corsini to release
him from custody as Leite asserts his conviction for traffick-
ing in drugs was obtained in violation of several of his fed-
eral constitutional rights.

II)  JURISDICTION:

The United States District Court for the District of Massa-
chusetts has jurisdiciton over this case pursuant to Title
28 U.S.C. §2254.

III)  PARTIES:

1.)  The petitioner, Tiago Leite, is presently a prisoner,

III)  who is incarcerated at the Bay State Correctional Center,
      P.O. Box 73, Norfolk MA 02056.  Leite is a citizen of the
      United States and the Commonwealth of massachusetts.

2.)  The respondent, Michael Corsini, is presently the Superin-
     tendent of the Bay State Correctional Center, P.O. Box 73,
     Norfolk MA 02056.  Corsini is holding Leite in his custody.

IV)  **RELEVANT PROCEDURAL HISTORY:**

   1)  On April 11, 1996, the Bristol County Grand Jury re-
       turned an indictment charging Leite with trafficking
       in 100 or more grams of cocaine.  (Ind. #9673CR0120)

   2)  On April 23, 1996, Leite entered a plea of not guilty
       in the indictment.

   3)  On September 3, 1996, Leite filed a motion to suppress
       evidence.  After a hearing on November 20, 1996, Jus-
       tice Raymond Brassard denied that motion in a memoran-
       dum of decision and order.

   4)  On January 21, 1997, Leite filed a motion to suppress
       evidence seized without a warrant.  Justice Brassard
       denied that motion on December 5, 1997.

   5)  On March 12, 1998, a jury of the Bristol Superior Court
       found Leite guilty of trafficking 100 grams or more of
       cocaine.  Judge Nonnie Burnes sentenced Leite to a term
       of ten years to ten years and a day at the Massachusetts
       Correctional Center at Cedar Junction.

**IV)**  6.)  On April 10, 1998, Leite filed a timely notice of appeal.

7.)  On September 28, 2000, the MA Appeals Court, in a <u>Rule 1:28</u> decision affirmed Leite's conviciton in <u>Commonwealth v. Leite</u>, A.C. No. 93-P-1163.  Leite did not seek further appellate review in the Supreme Judicial Court of Massachusetts.

8.)  On May 21, 2002, Judge Nonnie Burnes denied Leite's motion to reduce the verdict or order a new trial.

9.)  On June 6, 2002, Leite filed a timely notice of appeal.

10.)  On May 11, 2004, the MA Appeals Court affirmed Judge Nonnie Burnes order denying Leite's motion to reduce the verdict or order a new trial. (<u>Commonwealth v. Leite</u>, A.C. No. 02-P-918  **A.1-A.4**)

11.)  On June 30, 2004, the MA Supreme Judicial Court denied Leite's application for further appellate review. (<u>Commonwealth v. Leite</u>, SJC FAR No. 14154  **A.5**)

**V)**  <u>STATEMENT OF RELEVANT FACTS:</u>

Sergeant Scott Brooks of the Darthmouth (MA) Police Department assisted in the execution of the search warrant at 24 Holly Drive in Dartmouth on March 12, 1996.  He assisted in the stop of a car driven by Leite.  Robert Raposa was charged with the possession of a Class B controlled substance.  He does not recall money being taken from his person.  He did

**V)** not recall Sergeant Pacheco saying anything regarding Raposa. He was aware that Raposa was found not guilty. He was not aware of any issue regarding the return of funds to Raposa. (Tr. 3/94-99)

Robert Raposa had known Leite for years, and used to fish with him on Leite's boat. On March 12, 1996, he saw Leite at "Harry-O's." They had a conversation, and Leite invited him to go up with him to pick up his truck at his cousin Pedro Pine's house. Raposa agreed. They left around 4:30 or 5:00PM in Pine's car. When they arrived, Leite went into the garage through the open door, and then went into the house. Pine's daughter was playing outside. After a few minutes, he came out and said that pine was not home. Raposa said that was pretty obvious, since the truck was not there. They left. As they drove up Holly Street, a number of police cars surrounded and stopped their car.

The officers ordered them out of the car, and searched them. Officer Stone said, "He's got nothing." Sergeant Pacheco said, "Cuff him anyway. He's going." After they handcuffed him, they took him to Pine's house, and started searching the house. After about two hours, the officers searched Raposa a second time. They removed $507. from his back pocket. Raposa had a withdrawal slip for the money, which he had taken out of the bank earlier that day. He later went to court, and was found not guilty. (Tr. 3/103-112)

Maria Grace Leite, known as grace, had been married to Leite for thirteen years at the time of trial. They have two children, the youngest of whom was born on February 22,

**v)** 1996.   Grace worked as a secretary, and Leite worked as a
pleater.   He also owned a fishing boat at one time.   He was
a hard worker, and always worked more than one job.   Pedro
Pine, Leite's cousin, is married to her sister.   Prior to
their arrest, they were all very close.   (Tr. 3/120-123)
Throughout their marriage, Leite had a drinking problem.
He has sought help, and was admitted to Edgehill in 1990
or 1991.   He stayed sober for about a year after going there.
When he was not drinking, he was a quiet, shy, gentle person.
When he drinks, he is loud and belligerent, and constantly
fights with her.   Grace has thrown him out of the house a
number of times.   (Tr. 3/ 123-125)

In November of 1995, Leite came home drunk late one night.
Grace threw him out of the house.   Prior to kicking him out,
she observed his behavior, and suspected that he was on some-
thing other than alcohol.   Grace searched his jacket, and
found traces of cocaine on some packaging in his pocket.
She told the police about the cocaine residue when she threw
him out.   The next day, she brought some of his things to
Pine's house where he was staying.   Leite moved back in with
Grace after two to three weeks.   Later, they went to marriage
counseling.   (Tr. 3/ 125-128)

During the search of her house on the day of Leite's arrest,
the police would not tell her what was going on.   They told
her to ask her husband, who was handcuffed on the couch.   One
of the detectives asked her if she had ever seen drugs in the
house.   She said she had not.   (Tr. 3/ 131-132)

V)  The officers seemed very frustrated during the search, since
    they could not find anything.  They were rude, and they said
    a number of things that upset her and the children.  Eventu-
    ally, they found the money in the basement.  One of the of-
    ficers shouted, "Bingo!"  Detective Aguilar asked Leite,
    "Where did you get all this money from?"  Leite said that he
    worked all his life, and saved it.  Aguilar said that he
    worked all his life too, but that you would not find $12,000.
    in his basement ceiling.  Leite previously had a lobster li-
    cense, which he sold.  He may have shared the money with
    Pine.  In 1986, he was in a car accident.  He received a
    $9,000. settlement.  (Tr. 3/129-136)

    Leite had purchased a gun in 1988 or 1989.  He kept the gun
    in his closet.  In order to reach the gun, one would have to
    duck to get into that part of the closet, and then move things
    to uncover the box where the gun was kept.  It would take, at
    least, five to ten minutes to take it out.  (Tr. 3/137-140)
    After Leite's arrest, Grace spoke with Pine.  He said that
    he had talked to the DA, and that they were offering Leite a
    deal.  He recommended that he take it, and said that if he
    did, he would take care of her and her family.  She asked Pine
    what was going to happen to him.  Pine said, most likely, noth-
    ing would happen to him; that he would probably receive a sus-
    pended sentence.  He warned her that Leite should not go to
    trial.  He said, "He's a dumb bastard.  He's going to get up
    on the stand and go uh, uh, uh, because he does not have a
    clue.  I'll out talk him any day, and then your sister is

v)   going to testify against him."  He said he would burn him, and

that, according to the lawyers, Leite would get ten years.

(TR. 3/142-147)

Shortly after the birth of their child, Grace used plastic

bags to freeze her extra breast milk.  Her son was born on

February 22, 1996.  That week, Leite bought her some plastic

bags for that purpose.  (Tr. 3/ 149-150)


## VI)   GROUNDS FOR RELIEF:


### GROUND ONE:


> **LEITE WAS DENIED EFFECTIVE ASSISTANCE OF
> COUNSEL WHEREIN HIS TRIAL ATTORNEY FAILED
> TO FILE A MOTION TO SET ASIDE THE VERDICT
> OF GUILTY AND ENTER A FINDING OF SO MUCH
> OF THE INDICTMENT THAT ALLEGED THE LESSER
> INCLUDED OFFENSE PURSUANT TO RULE 25(a)
> OF THE MASSACHUSETTS RULES OF CRIMINAL
> PROCEDURE.**


The United States Supreme Court enunciated the two-part test

for ineffective assistance of counsel claims in Strickland v.

Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674

(1984).  "A convicted defendant's claim that counsel's as-

sistance was so defective as to require a reversal of con-

viction...obligates the defendant to show that counsel's per-

formance was deficient.  This requires a showing that counsel

was not functioning as 'counsel' as guaranteed the defendant

by the Sixth Amendment of the U.S. Constitution.  Second, the

defendant must show that the deficient performance prejudiced

the defense.  This requires a showing that counsel's errors

**VI)** were so serious as to deprive the defendant of a fair trial whose result is reliable." Id. at 2068

Here, trial counsel failed to file a Rule 25(a), M.R.Crim.P. motion to set aside the jury verdict of guilty of trafficking in 100 grams or more of cocaine. Commonwealth v. Libby, 358 Mass. 617, 621-622, 266 N.E. 2d 641 (1971); G.L. c.94C :32(b) (3), and enter a finding a so much of the indictment that alleged trafficking in 28 grams or more of cocaine. G.L. c.94C §32E(b)(2).

Trial counsel rendered egregious assistance by his failure to protect Leite's due process rights by not filing a motion to reduce the verdict pursuant to Rule 25(b), M.R.Crim.P. Trial Judge Nonnie Burnes declines to reach this issue raised in Leite's new trial motion by asserting that it could have been raised on direct appeal. Nevertheless, the MA Appeals Court exercised its power and authority to review the issue under the standard that the claimed "error resulted in a substantial risk of a miscarriage of justice. Commonwealth v. Azar, 435 Mass. 675 (2002)." **(A.3)**

However, the Appeals Court then goes on to deny relief on this claim on an assertion that is clearly erroneous, and contrary to the facts presented to the jury. The Appeals Court stated:

> The defendant's claim that the evidence was insufficient to warrant a verdict of guilty of trafficking in 100 or more grams of cocaine fails because there was sufficient evidence for the jury to conclude that the defendant constructively possessed the additional 14.55 grams of cocaine found in

**VI)**

> the codefendant's clothing as well as the
> grams of cocaine found in the garage. Thus,
> there was no error warranting the application
> of a substantial risk of a miscarriage of
> justice standard.
>
> The claim of ineffective assistance of coun-
> sel also fails. As noted, based on the evi-
> dence presented, a motion to set aside the
> verdict of guilty on the greater offense had
> minimal chance of success. "It is not inef-
> fective assistance of counsel when trial coun-
> sel declines to file a motion with minimal
> chance of success." Commonwealth v. Conceicao,
> 388 Mass. 255, 264 (1983)
>
> (Underlining added)  **(A.3-A.4)**

Now, all of the above sounds well and good until the sur-

face is given the slightest of scratches, and then this

fallcious house-of-cards, erected by the Appeals Court,

to deny Leite relief comes crashing down. Although the

Appeals Court purports that, "there was sufficient evidence

for the jury to conclude that the defendant constructively

possessed the 14.55 grams of cocaine found in the codefend-

ant's clothing," the Appeals Court neatly manages not to

include in its decision **one single word** to summarizes what

this claimed evidence might actually be. Of course, there

is one excellent reason for the Appeals Court's failure to

do so, and that is simply that the evidence does not exist!

The reality is that the Commonwealth totally failed to meet

any burden of proof standard, beyond a reasonable doubt,

that could persuade any reasonable trier-of-the-facts of

the possession element of C.L. c.94C §32E(b)(3) that Leite

had constructive possession of the 14.55 grams of coaine or that

he had knowledge of the location of the 14.55 grams of cocaine

hidden in Mr. Pine's inside pocket of his wool jacket which was

hung up in Mr. Pine's closet in Mr. Pine's bedroom in Mr. Pine's

house, or that Leite had the ability and intent to exert dominion

and control over it.

Therefore, trial counsel rendered ineffective assistance

by his failure to defend Leite's due process rights by not filing

a motion to reduce the verdict pursuant to <u>M.R.Crim.P., Rule 25
(b)(2)</u>.


GROUND TWO:


> **LEITE WAS DENIED HIS CONSTITUTIONAL RIGHTS TO
> DUE PROCESS BECAUSE THE COMMONWEALTH FAILED TO
> MEET ITS BURDEN-OF-PROOF AT TRIAL TO PROVE BE-
> YOND A REASONABLE DOUBT THAT LEITE WAS EITHER
> IN ACTUAL OR CONSTRUCTIVE POSSESSION OF THE
> 14.55 GRAMS OF COCAINE TO SATISFY THE ELEMENT
> OF POSSESSION OF G.L. c.94C §32(b)(3) OF THE
> 14.55 GRAMS OF COCAINE AND THE ABILITY AND
> INTENT TO EXERT DOMINION AND CONTROL OVER THE
> COCAINE FOUND IN PEDRO PINE'S HOUSE.**


The Commonwealth failed, during the prosecution of petitioner

Tiago Leite, to meet its burden-of-proof beyond a reasonable doubt

by presenting evidence, at trial, that could satify any rational

trier of the facts of the possession element mnadated by <u>G.L. c.
94C §32E(b)(3)</u> that Leite had the ability and intent to exert

dominion and control over the 14.55 grams of cocaine found in

Pedro Pine's house.

The applicable section of this statute reads:

Any person who trafficks in cocaine...by knowingly or
intentionally...possessing with intent to manufacture,
distribute or dispense...a net weight of one hundred
grams or more of cocaine...shall...be punished by a
term of imprisonment.

cf. Commonwealth v. Gonzalez, 42 Mass.App.Ct. 235, 237
    (1997)

In the lexicon of Massachusetts crime, G.L. c.94C §32E(b)(2),
as appearing in St. 1983, c.751 §3, in order for the Commonwealth
to convict Leite, the Commonwealth had the burden to prove that
he either had actual or constructive possession of the 14.55
grams of cocaine. This requires proof that Leite had knowledge
of the location of the 14.55 grams of cocaine, and the intent to
exert dominion and control over the 14.55 grams of cocaine that
was found by the police hidden in Mr. Pine's inside pocket of
his wool jacket, which was hung up in Mr. Pine's closet, in
Mr. Pine's house.

Absent evidence of actual possession, proof of constructive
possession is necessary. Commonwealth v. Caterino, 31 Mass.App.
Ct. 685 (1991). Absent evidence of actual possession of an il-
legal narcotic, proof of constructive possession is necessary
to support drug trafficking charge. Commonwealth v. Gonzalez,
42 Mass.App.Ct. 235 (1997).

"Constructive possession of a controlled substance requires
proof that the defendant had knowledge of the location of the il-
legal drugs plus the ability and intent to exert dominion and
control." Commonwealth v. Owens, 414 Mass. 595 (1993)

"To sustain burden of proof that the defendant possessed drugs on theory of 'constructive possession,' the Commonwealth is required to produce evidence of knowledge of presence coupled with ability and intent to exert dominion and control." Commonwealth v. Daley, 423 Mass. 747 (1997)

"Constructive possession of a controlled substance requires proof that the defendant had knowledge of location of illegal drugs plus ability and intent to exert dominion and control." Commonwealth v. Gonzales, 42 Mass.App.Ct. 235 (1997)

"Proof of constructive possession of contraband requires showing that defendant was aware of presence of particular item of contraband in question, and he had the ability and intent to exercise control over it." Commonwealth v. Clark, 44 Mass. App.Ct. 502 (1998).

"Defendant's residential status at premises is relevant in-culpatory factor to be considered in constructive possession of contraband found on premises." Clark supra

"Constructive possession and actual possession are simply two possible ways of defining the same legal principle with essential elements of either sort of possession being knowledge plus ability and intent to control." Commonwealth v. Fernandez, 48 Mass.App.Ct. 530 (2000)

"In order to sustain a conviction under theory of construct-ive possession in Massachusetts, the defendant must have knowledge of presence of the controlled substance and the ability and intent to exercise dominion and control over it." Hurtado v. Tucker, 245 F.3d 7 (1st Cir. 2001)

In Leite's case, the **only testimony** presented at trial, by the Commonwealth, in regards to the Commonwealth, in regards to the 14.55 grams of cocaine was elicited from Pedro Pine, who asserted that Leite gave him the 14.55 grams of cocaine.

There was no testimony whatsoever as to how the 14.55 grams of cocaine got into Mr. Pine's inside pocket of his wool jacket that was hung in Mr. Pine's closet, in Mr. Pine's bedroom, in Mr. Pine's house located at 24 Holly Drive in Dartmouth.

Pedro Pine did testify that Leite gave him the 14.55 grams of cocaine to take to work the next day. However, Justice Burnes struck down the parts of Mr. Pine's testimony regarding things that Leite might have said, but could testify to things that Leite actually did.

The Commonwealth never adduced at trial that Leite possessed the knowledge that Mr. Pine was hiding 14.55 grams of cocaine in the inside pocket of his wool jacket, and that Leite had the ability to exert dominion and control over the 14.55 grams of cocaine.

While testimony was elcited that Leite may have given 14.55 grams of cocaine to Pedro Pine, there was no testimony or evidence presented at trial that Leite had knowledge of the location of the 14.55 grams of cocaine after he gave it to Pine.

Mr. Pine testified that the 14.55 grams of cocaine came from the cocaine found in the garage. The cocaine, found in the garage, weighed 87.79 grams with an assay of **55%** purity, while the 14.55 grams had an assay of **29%** purity. **(A.6-A.7)**

Had the 14.55 grams of cocaine actually come from the 87.79

grams of cocaine, they would have had **the same purity** assay of **55%!**

Leite was denied his federal constitutional rights to due process because the Commonwealth failed to meet its burden of proof beyond a reasonable doubt that Leite had actual and/or construction possession of over **100 grams** of cocaine because it **totally failed** to prove that Leite had constructive possession of the 14.55 grams of cocaine by proving that he had knowledge of the location of the 14.55 grams of cocaine hidden in the inside pocket of Mr. Pine's jacket, hung up in Mr. Pine's closet, in Mr. Pine's bedroom, in Mr. Pine's house, **or** that Leite had the ability and intent to exert dominion and control over it.

Respectfully submitted,

Tiago Leite
Petitioner/Pro Se
Bay State Corr. Center
P.O. Box 73
Norfolk MA 02056
August 3, 2004

A.1

# Commonwealth of Massachusetts

### Appeals Court for the Commonwealth

### At Boston,

In the case no. 02-P-918

_____

COMMONWEALTH

_vs._

_____

TIAGO LEITE

Pending in the <u>Superior</u>

Court for the County of <u>Bristol</u>   _____

    Ordered, that the following entry be made in the docket:

<u>Order declining to hold a
hearing or act upon the
defendant's posttrial
motion affirmed</u>.

By the Court,

_____ ,Clerk

Date   May 11, 2004

NOTE:

The original of the within rescript
will issue in due course, pursuant
to M.R.A.P.23

    APPEALS COURT

A.2

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

02-P-918


COMMONWEALTH

vs.

TIAGO LEITE.


MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

The defendant was convicted on March 12, 1998, of trafficking in 100 grams or more of cocaine, in violation of G. L. c. 94C, § 32E(b)(3), and sentenced to a minimum mandatory sentence of ten years and one day.  On September 28, 2000, a panel of this court affirmed the conviction, pursuant to our rule 1:28, in Commonwealth v. Leite, 50 Mass. App. Ct. 1103 (2000).

Nearly two years later, the defendant filed a motion to set aside the verdict, or, in the alternative, for a new trial pursuant to Mass.R.Crim.P. 25(b)(2), as amended, 378 Mass. 901 (1979).  The defendant now challenges the trial judge's order disposing of the motion without a hearing.[1]  The principal contentions underlying his motion are that insufficient evidence was presented at trial to establish that he had constructive

---

[1] See Mass.R.Crim.P. 30(c)(3), as amended, 378 Mass. 901 (1979); Commonwealth v. Stewart, 383 Mass. 253, 259-260 (1981) (no evidentiary hearing required where a substantial issue is not raised).

possession of 14.55 grams of cocaine found in the pocket of a
codefendant's jacket and how trial counsel was ineffective in
failing to raise this issue.[2]

The 14.55 grams combined with the 86 grams discovered in the
codefendant's garage, pushed the total amount of cocaine over 100
grams, which is an element of the offense under G. L. c. 94C,
§ 32E(b)(3). The motion judge, who was also the trial judge,
declined to act upon the motion. The motion judge indicated, and
we think correctly, that this particular issue should have been
raised by the defendant on direct appeal but was not. We also
add that the defendant failed to raise the issue at trial.

Even though the motion judge declined to act on the
defendant's motion, and the defendant's claims therein may well
have been waived, we must still address whether the defendant's
alleged claims of error resulted in a substantial risk of a
miscarriage of justice. Commonwealth v. Azar, 435 Mass. 675
(2002). The defendant's claim that the evidence was insufficient
to warrant a verdict of guilty of trafficking in 100 or more
grams of cocaine fails because there was sufficient evidence for
the jury to conclude that the defendant constructively possessed
the additional 14.55 grams of cocaine found in the codefendant's

---

[2] The defendant also claims his appellate counsel was
ineffective in failing to raise those claims in his direct
appeal. Since those claims were not raised in his motion, we
decline to address them.

2

clothing as well as the 86 grams of cocaine found in the garage. Thus, there was no error warranting the application of a substantial risk of a miscarriage of justice standard.

The claim of ineffective assistance of counsel also fails. As noted, based on the evidence presented, a motion to set aside the verdict of guilty on the greater offense had minimal chance of success. "It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success." Commonwealth v. Conceicao, 388 Mass. 255, 264 (1983).

For the foregoing reasons, we affirm the motion judge's order declining to hold a hearing or act upon the defendant's posttrial motion.

So ordered.

By the Court (Greenberg, Porada & Green, JJ.),

First Assistant Clerk

Entered:  May 11, 2004.

3

# Supreme Judicial Court for the Commonwealth of Massachusetts
### One Beacon Street, Third Floor, Boston, Massachusetts 02108
### (617) 557-1020


Tiago Leite
Bay State Correctional Center
P.O. Box 73
Norfolk, MA 02056-0073


RE:  Docket No. FAR-14154

**COMMONWEALTH**
**vs.**
**TIAGO LEITE**

> No. BRCR1996-00120
> A.C. No. 2002-P-0918

### NOTICE OF DENIAL OF F.A.R. APPLICATION

Please take note that on 06/30/04, the above-captioned Application for Further Appellate Review was denied.


Susan Mellen, Clerk


Dated: June 30, 2004

To:  Kevin Connelly, A.D.A.
     Tiago Leite

A.6



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
### Department of Public Health
### State Laboratory Institute
### 305 South Street
### Boston, MA 02130-3597
### 617-983-6622


EXHIBIT
/b
3-11-98  LRS

Willam F. Weld
Governor
Gerald Whitburn
Secretary
David L. Mulligan
Commissioner

**DATE RECEIVED:** 03/19/96
**DATE ANALYZED:** 04/05/96

**NO.** 479888
**I hereby certify that the** powder
**Contained in** 1 plastic bag                **MARKED:** 479888
**Submitted by** DET. NED LEDUC  of the NEW BEDFORD POLICE DEPT.

**Has been examined with the following results:**
The powder was found to contain:
Cocaine, a derivative of Coca leaves, as defined in Chapter 94 C,
Controlled Substance Act, Section 31, Class B.

**NET WEIGHT:** 14.55 grams
**ASSAY:**    29%  Cocaine HCl
**DEFENDANT:** PINE, PEDRO ETAL

ASSISTANT ANALYSTS  Charles Salemi    Sandra Lipchus

**Sworn and subscribed to before me this day,** _APR 0 9 1996_
**I know the subscribers to be assistant analysts of the Massachusetts
Department of Public Health.**

My Commission Expires _MAY 0 6 2001_

NOTARY PUBLIC

Chapter 111, Section 13 of the General Laws
This certificate shall be sworn to before a Justice of the Peace or Notary Public, and the jurat shall
contain a statement that the subscriber is the analyst or assistant analyst of the department. When
properly executed, it shall be prima facie evidence of the composition, quality, and the net weight of
the narcotic or other drug, poison, medicine, or chemical analyzed, or the net weight of any mixture
containing the narcotic or other drug, poison, medicine, or chemical analyed, and the court shall take
judicial notice of the signature of the analyst or the assistant analyst, and of the fact that he/she is
such.

Form CSS-63
(11-95)



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
### Department of Public Health
### State Laboratory Institute
### 305 South Street
### Boston, MA  02130-3597
### 617-983-6622



Willam F. Weld
Governor
Gerald Whitburn
Secretary
David L. Mulligan
Commissioner

**DATE RECEIVED:** 03/19/96
**DATE ANALYZED:** 04/05/96

**NO.** 479887
**I hereby certify that the** powder
**Contained in** 1 plastic bag                    **MARKED:** 479887
**Submitted by** DET. NED LEDUC  of the NEW BEDFORD POLICE DEPT.

**Has been examined with the following results:**
The powder was found to contain:
Cocaine, a derivative of Coca leaves, as defined in Chapter 94 C,
Controlled Substance Act, Section 31, Class B.

**NET WEIGHT:** 87.79 grams
**ASSAY:**    55%  Cocaine HCl
**DEFENDANT:** PINE, PEDRO ETAL

**ASSISTANT ANALYSTS**  Charles Salemi      Sandra Lipchus

Sworn and subscribed to before me this day,  _APR 0 9 1996_ .
I know the subscribers to be assistant analysts of the Massachusetts
Department of Public Health.

My Commission Expires  _MAY 0 6 2001_

NOTARY PUBLIC

Chapter 111, Section 13 of the General Laws
This certificate shall be sworn to before a Justice of the Peace or Notary Public, and the jurat shall contain a statement that the subscriber is the analyst or assistant analyst of the department. When properly executed, it shall be prima facie evidence of the composition, quality, and the net weight of the narcotic or other drug, poison, medicine, or chemical analyzed, or the net weight of any mixture containing the narcotic or other drug, poison, medicine, or chemical analyed, and the court shall take judicial notice of the signature of the analyst or the assistant analyst, and of the fact that he/she is such.

Form CSS-63
(11-95)